0735417, The General Store, Inc. v. Van Loan. Each side on this case has 10 minutes. Good morning, Your Honor. Richard Gardner, appearing for The General Store. The primary issue that the Court's going to have to deal with is what is the meaning of the word willfully, and the government last week notified the Court that the Sixth Circuit had just handed down an opinion last week in the Armolite, Inc. v. Lambert case, which presented exactly the same issue. And as we have argued in this case, the Sixth Circuit panel unanimously agreed that the Supreme Court's recent decision in the Safeco case, which actually came out of this circuit, was the correct interpretation of the term willfully when used in this civil statute. How does that differ from the earlier cases? From the earlier? From our earlier. From the earlier cases in Perry v. Cucciara? Well, the Perry v. Cucciara case has talked about deliberate actions or plain indifference, and this is a kind of how many angels dance on the head of a pin situation, because what is the difference? Is there a distinction between reckless and plain indifference? And I would argue that there is a distinction that recklessness is a higher standard than plain indifference. Of course, if this Court were to construe, as the Sixth Circuit did, plain indifference to be the same thing as recklessness, that is, you've got to show, then the Perry v. Cucciara case obviously I think would remain good law in light of the Supreme Court's decision. And it's hard to articulate the distinction, but I think there's a distinction between being reckless as you simply just don't care. You're indifferent. Huh? You're indifferent. It's more than just mere indifference. I guess plain indifference is something higher than mere indifference, and maybe plain indifference has that reckless connotation to it. But let me go back to the Sixth Circuit case. Didn't they basically say that reckless violations of known obligation is the same thing as plain indifference, to the same obligation? And you're now trying to tell us they are actually something different. I think they did, and that's why I'm saying this is a kind of angels dancing on the head of a pin kind of case. I'm willing to concede that if plain indifference and recklessness are semantically the same thing, then the Perry and Cucciaro cases would continue to govern even in light of that. And if that happens, then what? Are you toast on this? No, I don't think so, because I think in this case we have two issues, two counts, and the district court didn't clearly articulate what it understood plain indifference. I think it applied a kind of a negligence notion to plain indifference, and that clearly the Sixth Circuit said you can't do it. It doesn't mean negligence. Well, Judge, it takes some pains to point out that your folks were told over and over again not to do it the way they were doing it. Well, that's not quite accurate, Your Honor. With regard to not maintaining the acquisition and disposition record, with regard to repair firearms, which is the first issue, what he said was that they were on notice when ATF told them in a prior inspection that they had to maintain these records. But if you look at what ATF actually told them, what they said was that there has to be a record of some kind, it says, should be recorded by someone or in some way so that firearms returned or otherwise disposed of on a different business day can be recorded as required by the Gun Control Act. They didn't say anything, and they were on notice that they had to do something. And, in fact, what they ended up doing as a result of that is they created this acquisition and disposition book as to when firearms were taken into the business for repair, it was when they were shipped out for warranty work to the manufacturer that they didn't make an additional entry into the acquisition and disposition book because they interpreted this kind of broad, vague language that they had to record it in some way as encompassing using the repair tags. They had to try to keep track of where the guns are. Right, and they did, and they knew exactly. There was no dispute that they knew where they were. They had repair tags for every firearm that went out to a manufacturer and that came back. Guns that were repaired in-house are not at issue because the acquisition and disposition record was kept. But guns went out to manufacturers. They were not putting them in that bound book. They were keeping them on a separate tag. There was no issue that there wasn't a record kept. The only question was it wasn't in the format that the regulations require. It was on a separate book. Well, what about the police department? Well, in that case, again, the district court judge said that they were on notice because of what was on the form. In that case, the store had been doing this practice for 12 years with the Spokane Police Department, and not once had the Spokane Police Department said anything to them that they weren't going to process those forms. That's not their obligation. They don't have people send stuff to people all the time, and it may or may not be the right place to send it. So I'm not sure how that gets you anywhere. Well, it gets us anywhere because the statute that's at issue, 922B2, is somewhat unusually worded in terms of where liability is. It says that it's a violation to sell if you're in violation of state law unless the licensee knows or has reasonable cause to believe that the sale would not be a violation. And in this case, the fact that they were for 12 years sending these forms to the Spokane Police Department, and the forms had obviously other than Spokane addresses on them. That's why they shouldn't have gone to the Spokane Police Department. Yet the Spokane Police Department processed every single one of them as if they were... You mean just didn't come back. No, no, processed them, sent back a response and said, this sale is okay, go ahead and do it. That's what Washington state law required. So they weren't just taking them. Well, suppose we thought that that was a problem. Would it make any difference? I mean, they still had their license revoked, but we thought the other violation would stand, so it wouldn't make any difference. Well, if there's one willful violation, then you can see that's enough for a revocation. So it wouldn't make any difference. So you have to consider, if you find one, then you don't need to address the other. But I would argue that obviously in neither case can you find a willful violation. And in addition, with regard to the forms going to the wrong police department, you can't even find a violation of the statute to begin with because... With regard to the first violation, there were two earlier warnings or sanctions for not keeping the records straight. At that point, were they keeping it on the receipts at that point? No. At the prior inspection, with regard to the repair firearms, that's what we're talking about, they were not keeping an acquisition disposition. They were keeping them for all transactions just on these tags. But they weren't keeping them on the tags, so they knew that they weren't supposed to be doing that. So then they transfer. Then when ATF comes in and says they have to keep the records in some way, then they started keeping the acquisition disposition log for the firearms that they kept in the store that didn't go out to the manufacturer. For the ones that went out to the manufacturer, they used this tag system. And so they understood that what they had to do was to keep the record as far as transfers of firearms that they were keeping in the store for repairs and that there wasn't a problem with continuing to do it with the tag system for the ones that went out to the manufacturer. As long as they were keeping the records because, as I said, ATF said in some way, and that was how they interpreted that. Let me ask you about the stay question. I understand your legal argument that it should also apply pending the judicial review. Yes, ma'am. If you are correct about that, but let's say you didn't prevail on the violation issue, where would that leave you? Well, I think it's one of these capable of repetition, evading review situations. It would leave us that they should have been able to stay in business while this case was pending, but it probably is in many respects, I concede, almost meaningless. Unless you could get some kind of civil remedy. Some kind of civil remedy. I just want to understand. There are the statute does allow for the Equal Access to Justice Act, of course, allows for recovery of attorney's fees if you're successful on the revocation process. So that doesn't really affect the stay. As I said, I think it's more of a capable of repetition, evading review, because assuming that they got their license back, this could well happen again, and they could be put out of business for two or three years while the judicial review is pending. So I think it's an issue that the court can decide, but I would concede it probably doesn't. You're in that weird situation where you're saying it's not moot, but it wouldn't have any effect. That's right. That's right. But if they get their license back, it could well have an effect down the road. If there's another attempt to revoke their license, then it would be much more significant. Do they do other things besides sell guns? They do. It's an Ace Hardware store, among other things. So they sell hardware and they sell other sporting goods, clothes, things like that. Thanks very much. Thank you, Judge. Good morning. Good morning. May it please the Court of Counsel. My name is Rolf Tangle. I'm an assistant United States attorney from Spokane. Seated with me at counsel table is Larry Nickel. He's the Associate Chief Counsel West for the Bureau of Alcohol, Tobacco, and Firearms and Explosives. I'd like to address first the issue of the definition of willful. And your Honors, understand that on Friday I did provide a letter to the Court indicating the Sixth Circuit had ruled in that case. It's an interesting opinion because it talks about indifference, and then right next to it it puts in parentheses willful. And it does identify the SAFCO opinion, which counsel has raised in his brief, but at the same time gives the exact same standard that Judge Van Sickle used following the Perry decision. I think the interesting part of that case is what it says afterwards. And there were two places. It's in the last paragraph of the opinion, Your Honor. And it says two things that I think are instructive with respect to defining indifference. The first one is, and I'm paraphrasing, but indifference is the consistent failure to ensure the full and accurate completion of required forms, which is exactly what we have here. The second is at some point repeated negligence becomes recklessness. And it seems to me that those two are instructive as to what this dancing on the head of a pin with the idea of indifference is. We have some instruction. Also, I think it's important that Armolite talks specifically about Perry and indicates that Perry is still good law. One of the arguments in this case is the 1986 amendments to the Gun Control Act changed and took out any cases, any presses before 1986. I think Armolite stands for the proposition that that just didn't occur. And Armolite identifies five different circuits that have addressed the issue head on, and all five have the same indifference language in the statute. Judge Van Sickle was correct in utilizing the Perry decision from the Ninth Circuit, and it is consistent with all of the circuits that have addressed the willfulness standard. I would like to, if it's all right, to turn to the two violations. The first violation that Judge Van Sickle found was the acquisition and disposition book. I'll call it the A&D book for short. But it's essentially for repair firearms that left. It's admitted that the general store did not put in the A&D book guns that they sent out and guns that they received in for repair purposes. That's admitted. It's also admitted that that's a violation of the Gun Control Act. So we have those two admissions, and the judge, I think, put them in his findings, Judge Van Sickle, which is found at the beginning of Excerpt of Record No. 1. The interesting part is this notice issue. Now, Judge Van Sickle took his time, and the record shows that there was a 2000 inspection of the general store. At that time and following meetings following the 2000 inspection, they were told about how to record in the A&D book repair firearms. There was a 2001 inspection as well, and that resulted in a 2001 violation for a firearm that was sitting over in the corner that was a repair firearm that wasn't in the A&D book. So there was a violation from the 2001 inspection that specifically addressed this. Mr. Gardner indicates that he thinks that there is some vagueness in the instructions that were given, but I would point the court to Excerpt of Record Volume 2, page 71, which is the front cover of the firearms repair log. And the United States positions, there's nothing vague about it. I will hold it up for the court since it's part of the Excerpt of Record. And you can see across the very front of the front page, it says, quote, be sure to log in all firearms received for repair and log them out on delivery. Pretty clear, not very vague. There is a handwritten over the— That seems like it leaves out what happens in between. I'm sorry, Your Honor? Like if you had to send it out, like if I give you my firearm for repair. Yes. And then that says make sure you log it out when you give it back to me. No, it says receive for repair and log them out on delivery. So you log them in and you log them out. Right. Right. And so when the firearm comes in, you have an acquisition. When the firearm goes out, you have a disposition. When the firearm comes back in from the repair, you have an acquisition. See, I think to take his point, read that as being when it comes in from the customer, log it in, and make sure when you give it back, you log it out to the customer, as opposed to that there may be interim steps before it gets back to the customer that also need to be logged in and out because it doesn't tell you that. Judge Vensic will address that issue later on in his order. Underneath, important delivery information that states, if any firearm logged into the gunsmith's firearm repair log is delivered to anyone other, and anyone other is underlined with somebody's hand, then the person who brought it in for repair, an entry must be made in your permanent firearms acquisition and disposition book into form 4473 filled out and filed just as though the gun had been sold. So I think Judge Vensic, and he quoted that in his order as well, has addressed that issue. The interesting part of page 71 of excerpt record number 2 also is over what purports to be Jim Barney's initials is a statement that all firearms on premise must be entered. So there's some knowledge demonstrated by page 71 of excerpt record number 2. And interestingly also, the date issued when this started was October 20, 2001, which was prior to the period for the violations. Was the violation, did they log them in? But not out, or did they not log them at all, the ones that were being sent for repair? The firearms that were being sent for repair were not logged out when they went out for repair. Were they logged in though? I think they were logged in, in a separate book. They had a different area for guns that they ended up fixing right there at the shop. Those were logged in and logged out in a separate book, but there was only tags placed on the ones that had to be sent out for repair. So even if there were confusion about whether the ones that were sent out for repairs had to be logged out when they had to be recorded when they were sent out for repair, they also had to be recorded when they came in for repair, and that wasn't happening either. That's right. Is that right? Is that what you're saying? What I'm saying is, no, I think just the opposite of what I'm saying. When the guns came into the shop and they stayed in the shop, they were logged in and logged out. Well, suppose they didn't stay in the shop. Somebody brought in a gun, and they were going to send them out for repair. But as I understand this document, they still had to log them in. There may be some confusion about whether they had to log them out when they sent them out for repair, but they certainly had to log them in when they came into the shop. Did they do that? Yes. So when guns came in for repair, which were to be sent out, they logged them into the shop, but they didn't log them out when they… They sent them out for repair. But they were in this book when they were logged in. Logged in at the time that they came into the general store, but not logged out when they went out for repair. So someone looking at the log would think the gun was still on the premises when it really wasn't. Exactly. What we would have, Your Honor, is we would have someone come in… Or you wouldn't know where it was. Right. We wouldn't know where it was. So someone would come in and look at the log, and they'd say, okay, you have 37 guns that have been logged in for repair. Where are they? They're here on the premises someplace because they've been logged in. And the general store would say, I don't know where they are. Or they would say, well, they went out for repairs. But there's no way to look at the A&D book to find that information. In other words, there's a hole. And the idea of the A&D book, which is a national, across the country requirement under the Gun Control Act, is so that ATF and others can come in and be able to track a firearm at any time, whether it's in the shop, out of the shop, given to a person, not given to a person. So what we end up here with is a violation because we have a hole in that process. And that hole occurred after numerous explanations. So where in the record do we know that the directions they were given with regard to the earlier violations were to record in the book when they sent it out for repair? I have identified it in my brief, Your Honor. I'm sorry I don't have the exact site. I did put it also in my supplemental excerpt of record. I believe it is in the first, I think it's around page 25, 20 in my excerpt of record, right, in that area. And what it is is it's a finding by the Richard Van Loon, and attached behind the finding is the five violations specifically. If the court would like me to identify it specifically in a letter, I'll call during the hearing. I assume we'll be able to find it. I'm sorry? I assume we'll be able to find it. Okay, but I'd be happy to identify it if the court needs. I'd like to turn to the last violation, and that essentially is pursuant to the Brady Bill, that a licensee must identify or provide a copy of the application for a pistol to the local law enforcement officer in the area where the person resides. That would either be the county sheriff or the chief of police. And the reason for that is pretty simple and pretty obvious, I believe, and that is local law enforcement will know whether or not a person who's applied for a pistol is either maybe dangerous, known to be dangerous, may be known to have a mental issue, and it provides information to the local authorities as to what citizens in their community are trying to seek fire on. Is it required by the Brady Bill or by Washington law? It's required by Washington law, but I think the nexus of Washington law started from the Brady Bill. Brady Bill doesn't have to obey Washington law. Yes. The law says you have to notify the chief of police in the city where the buyer resides. Right. 18 U.S.C. section 922B2 says that a violation of state law is a violation of federal law. And so what happens in this case, and what we have as the record is we have the declaration of Bruce Barony, which is, I can identify that in the record. It is in, it's at Excerpt of Record Volume 2, page 8. In his declaration, he indicates that there is information contained on one of the three pages in triplicate that says, quote, send this original to the chief of police of the municipality or the sheriff of the county of which the purchaser is a resident. Admittedly, they didn't do that. I can see I'm out of time. If the court has questions, I'll be happy to try to answer them. Mr. McEwen, anything to add? I guess not. Thank you. Mr. Gardner, you used up your time. If you need a minute or so, if you could keep it to a minute, we'd appreciate it. I will. Two points I want to make. With regard to Armalite, first of all, the court said in the last paragraph, although Armalite knew its employees were not fully and accurately completing the forms, Armalite chose not to take steps to ensure future compliance. We don't have that here with either of the violations. And with regard to the repair log, I want to clarify something the counsel said. He said that they didn't know where the firearms that were, when the firearms came in, they were recorded after 2001. They were recorded as acquisitions when they came from the customer. If they stayed in the store and then when they went back to the customer, they were recorded as dispositions. The whole, if you will, is when they went from the store to the manufacturer and back. But it is not true that there was no record maintained. What there was was a repair tag was maintained that had all of these. It was supposed to be kept in a bound book. It is. There's no question about that. But the issue is whether by doing what they did, they acted recklessly. And I would argue that by doing what they did, they weren't right. There's no question. They didn't, they should have had it in a bound book, but they didn't act recklessly because they had a record. If ATF had come in and said, where is this gun? We don't see it. We see an open disposition. They could have said, I'll tell you. Give me, you know, and they'd gone and grabbed that information and given them as fast as they could have given them from the acquisition. Had they been told earlier that it had to be in a book? No. And what the book said, what the firearms repair log says, as was pointed out earlier, it says be sure to log in all firearms received for repair and log them out on delivery. The obvious interpretation of that is when you get it from the customer, you log it in. When it goes back to the customer, you log it out. They were doing that. The note at the bottom that counsel also read says about delivery to anyone other than the person who brought it in for repair, an entry must be made in your permanent acquisition disposition record and a form 4473 filled out and filed just as the gun had been sold. That refers to transfers that are made to non-licensed private citizens where, you know, let's say your spouse comes in to pick up the gun that you've left for repair. You have to do a 4473. That clearly doesn't apply to transfers to manufacturers because there are other licensees and the 4473 requirement doesn't apply. So the reasonable construction of what's on the front page of this document is that it only applies to transfers. What were they told in their earlier meetings? In the earlier meeting, they were told that they had to keep the record by someone in some way. That's all it says. That's what's in the record. Where is that in the record? That is... Let's see if I can find it here. Your Honor, it's in the Excerpts of Records Volume 1 at page 11, the corrective action. Thank you. Thanks very much, Mr. Gargan. Thank you, Judge. I appreciate the additional time. Thank you. Thank you, Counsel. The case argued is submitted. 0771418, Valdovinos, Moreno v. McCasey is submitted on the briefs at this time.
judges: Silverman, McKeown, Berzon